IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD A. CLARK   )<br>                   )<br>    Plaintiff,     )<br>                   )<br>v.                 )<br>                   )<br>KILOLO KIJAKAZI,   )<br>Acting Commissioner of the   )<br>Social Security Administration,   )<br>                   )<br>    Defendant.    ) | Case No. CIV-21-17-STE |

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

### I.      PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 15-27). The Appeals Council denied

Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 1, 2015, the alleged onset date. (TR. 17). At step two, the ALJ determined Mr. Clark suffered from the following severe impairments: degenerative disc disease; degenerative joint disease of both knees; obesity; antisocial personality disorder; intermittent explosive disorder; posttraumatic stress disorder; major depressive disorder; and drug use disorder. (TR. 17). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 18-19).

At step four, the ALJ concluded that Mr. Clark retained the residual functional capacity (RFC) to:

> [L]ift, carry, push or pull up to 10 pounds frequently and 20 pounds occasionally; able to sit up to 6 hours in an 8-hour workday; able to stand and/or walk up to 4 hours in an 8-hour workday (Light work is defined in 20 CFR 404.1567(b) and 416.967(b)) except he is able to occasionally climb ramp[s] or stairs, stoop, kneel, crouch or crawl. The job should not involve climbing ladders, ropes or scaffolds. He is able to understand, remember and carry out simple and detailed tasks of 1-4 steps with routine supervision. The claimant is able to interact with supervisors as needed to receive work instructions and accept respectful supervision and constructive criticism from supervisors. He is able to work in proximity to co-workers, but the job should not involve close communication or cooperation with co-workers in order to complete work tasks. He is able to interact with the

general public if needed to refer a member of the public to a supervisor or co-worker for assistance, but the job should not involve customer service or other work where interacting with the general public is an essential function of the job. The claimant is able to adapt to a work setting and forewarned changes in a usually stable work setting. He is able to sustain attention and concentration for up to 2 hours at a time while performing simple and detailed tasks of 1-4 steps and is able to sustain the mental demands associated with performing simple and detailed tasks of 1-4 steps throughout an ordinary workday and workweek.

(TR. 20-21).

With this RFC, the ALJ concluded that Mr. Clark could not perform his past relevant work. (TR. 25). Thus, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 60-61). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 60). At step five, the ALJ adopted the VE's testimony and concluded that Mr. Clark was not disabled based on his ability to perform the identified jobs. (TR. 26-27).

### III. ISSUES PRESENTED

On appeal, Mr. Clark alleges: (1) the RFC was inconsistent with Plaintiff's ability to perform unskilled work and (2) the ALJ erred at step five by failing to resolve a conflict between the DOT and the VE's testimony. (ECF No. 19:6-9).

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard,

a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.   NO INCONSISTENCY BETWEEN THE RFC AND PLAINTIFF'S ABILITY TO PERFORM UNSKILLED WORK

Plaintiff argues that reversible error exists based on an inconsistency between the RFC and his ability to perform the unskilled jobs identified at step five. (ECF No. 19:7-9). The Court disagrees.

Social Security Ruling (SSR) 85-15 states:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985).

At step four, the ALJ found that Mr. Clark retained the RFC to "interact with supervisors as needed to receive work instructions and accept respectful supervision and constructive criticism from supervisors." (TR. 21). At step five, the ALJ determined that

4

Plaintiff was not disabled based on his ability to perform three unskilled jobs. (TR. 25). On appeal, Mr. Clark argues that the RFC which allows for him to "accept respectful supervision" was inconsistent with the requirement in SSR 85-15 that an individual be able to "respond appropriately to supervision . . . and usual work settings." (ECF No. 19:8). According to Plaintiff, "whether a supervisor is being respectful is too subjective" and to comply with SSR 85-15 "an accommodation would have to be made." (ECF No. 19:8). The Court disagrees.

The RFC specifically stated that Mr. Clark was able to "interact with supervisors as needed to receive work instructions" and "adapt to a work setting and forewarned changes in a usually stable work setting." (TR. 21). The Court concludes that these findings are consistent with SSR 85-15 which mandates that an individual performing unskilled work be able to "respond appropriately to supervision . . . and usual work settings." *See supra*. Plaintiff argues that the ALJ's finding that Mr. Clark could accept "respectful supervision" is "too subjective" and "vague," but the Court concludes otherwise, finding that the limitation to being able to accept "respectful supervision" is merely descriptive of Plaintiff's ability to receive ordinary supervision, as opposed to abusive conduct from a supervisor. Common sense dictates affirming the Commissioner's decision on this point, and the Court finds Plaintiff's argument boils down to nothing more than an issue of semantics. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (affirming where the court could follow the ALJ's reasoning in conducting its review, and could determine that correct legal standards had been applied, noting that "common sense, not technical perfection, is our guide."); *Stone v. Berryhill*, No. CIV-16-

1379, 2017 WL 4700088, at *4 (W.D. Okla. Oct. 19, 2017) (rejecting Plaintiff's argument as "merely an issue of semantics.").

### VI.   NO ERROR AT STEP FIVE

Mr. Clark argues that the ALJ erred at step five by failing to resolve a conflict between the DOT and the VE's testimony regarding Plaintiff's ability to perform certain jobs at step five. (ECF No. 19:6-7). The Court disagrees.

"In making disability determinations," the Commissioner relies "primarily on the DOT" at steps four and five of the sequential evaluation process. SSR 00-4p, 2000 WL 1898704, at *2. Nonetheless, ALJs may also use VEs "at these steps to resolve complex vocational issues." *Id.* A VE's evidence should generally "be consistent with the occupational information supplied by the DOT." *Id.* As such, an ALJ who takes testimony from a VE assumes certain affirmative responsibilities. First, where a VE provides evidence about a job's requirements, the ALJ must "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT." *Id.* at *4. Second,

> [w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.

*Id.* at *2. Finally, the ALJ must resolve any actual conflicts, and explain how he did so, before relying on the VE's testimony. *Id.* at *4.

> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

*Id.* at *2.

6

At step four, the ALJ specifically found that Mr. Clark could walk and/or stand up to four hours in an 8-hour workday. (TR. 20). At step five, the ALJ concluded that Plaintiff was capable of performing three jobs in the national economy, all of which are defined as "light work." *See* TR. 26; DOT #920.687-042 (bottling-line attendant); DOT #729.687-010 (electrical accessory assembler); DOT #559.687-074 (inspector/packer). Social Security regulations define "light" work as work that "requires a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b) & 416.967(b). The Commissioner has further defined the ability to perform the full range of light work as being able to "stand[ ] or walk[ ], off and on, for a total of approximately 6 hours of an 8–hour workday." SSR 83-10, 1983WL 31251, at *6 (1983). According to Plaintiff, the ALJ failed to reconcile to the conflict between his ability to only walk and/or stand for 4 hours per day with his ability to perform the "light" jobs identified by the VE which the ALJ ultimately relied on at step five. (ECF No. 19:7-8). The Court rejects Plaintiff's argument.

At the administrative hearing, the ALJ posed a hypothetical to the VE regarding jobs that could be performed if an individual was limited to walking and/or standing 4 hours in an 8-hour workday. (TR. 40). The VE testified that a person so limited would be able to perform Plaintiff's past relevant work, with the exception of the cook job. (TR. 61). In doing so, the ALJ recognized: (1) that the past jobs had been performed by Plaintiff in the "light" exertional category and (2) that Plaintiff was limited to walking and/or standing only 4 hours during an 8-hour workday. (TR. 61). The ALJ obviously recognized the potential conflict between the definition of "light" work and Plaintiff's 4-hour walking/standing limitation, as he asked the VE whether the past jobs would be

7

available "[e]ven with the four hours' stand and walk [limitation]." (TR. 61). The VE: (1) clarified that he considered the 4-hour limitation to render the hypothetical as one describing a "modified light" exertion level rather than a traditional "light" level as described by the Social Security regulations and (2) stated that the past work would remain. (TR. 62). Using the same hypothetical, the ALJ then asked the VE if there were other jobs in the national economy that Plaintiff could perform. (TR. 62). The VE identified the three jobs ultimately relied on at step five, and again, recognizing the "modified light" exertional level, the VE specifically stated that the jobs were "primarily sitting jobs and walking and standing [we]re not essential to the performance of the jobs." (TR. 62). Finally, the VE stated that her testimony was consistent with the DOT. (TR. 62).

Based on the colloquy at the administrative hearing, the Court finds that the ALJ properly discharged her duties at step five by: (1) "[a]sk[ing] the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT" and (2) relying on the VE's testimony that Plaintiff could performed the identified jobs, even with a 4-hour standing/walking limitation, based on the VE's explanation that the particular jobs identified did not require significant walking. Accordingly, the Court finds no error with the ALJ's reliance on the VE's testimony/the jobs at step five and affirms the Commissioner's decision.[1]

---

[1] Plaintiff also states: "the ALJ did not resolve the conflict between the VE's testimony and Social Security law by including a "sit/stand option in her RFC." (ECF No. 19:6). But this argument is premised on an unresolved conflict, which is not the case here. Furthermore, Plaintiff has not identified any evidence that would require the inclusion of a sit/stand option in the RFC. *See, e.g.*, *Maestas v. Colvin*, 618 F. App'x 358, 361 (10th Cir. 2015) (rejecting the claimant's challenge to the RFC where claimant failed to cite evidence "specific in the medical records to support his alleged functional limitations.").

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on December 21, 2021.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE